UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ATCHAFALAYA BASINKEEPER             CIVIL ACTION
ET AL.

VERSUS                              NO: 14-649

BOSTICK ET AL.                      SECTION: "J" (5)

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 39)** filed by Plaintiffs the Atchafalaya Basinkeeper and Louisiana Crawfish Producers Association-West, Defendants the United States Army Corps of Engineers and Lieutenant General Thomas Bostick (collectively, "the Corps")'s *Cross Motion for Summary Judgment* **(Rec. Doc. 43)**, Plaintiffs' reply and opposition (Rec. Doc. 44), and Defendants' reply. (Rec. Doc. 48) Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Plaintiffs' *Motion for Summary Judgment* should be **GRANTED IN PART** and that Defendants' *Cross Motion for Summary Judgment* should be **GRANTED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

This dispute arises from the Corps' August 2012 decision to authorize under a general permit a request to build a ring levee and access road in the Atchafalaya Basin in Iberville Parish, Louisiana. The Atchafalaya Basin contains multiple navigable

bayous and adjacent wetlands that support the local Cajun culture. See (Rec. Doc. 39-1, p. 22; Rec. Doc. 39-12, p. 1; Rec. Doc. 43-1, pp. 2-3). The Louisiana Black Bear's critical habitat extends into the Atchafalaya Basin in the northern portion of Iberville Parish. (Rec. Doc. 43-2, p. 15)(citing AR 830).[1] Additionally, certain sections of the Atchafalaya Basin are incorporated into the Sherburne Wildlife Management Area. See (Rec. Doc. 39-12, pp. 1-2; Rec. Doc. 43-2, pp. 13-14).

In April 2009, Expert Oil & Gas (Expert Oil) sought authorization under General Permit 13 of the New Orleans District of the Corps (NOD-13) to build a ring levee and access road for its well in the Atchafalaya Basin. (Rec. Doc. 43-1, p. 1) The Corps in June 2009 held a Geologic Review meeting to review the proposed project and "determine whether there were any less damaging feasible alternatives for the proposed work." Id. at 2 (citing AR 656, 660). Representatives of the Corps, the Louisiana Geologic Survey (Louisiana Geologic), Expert Oil, and the Louisiana Department of Wildlife and Fisheries (Louisiana DWF) participated. Id. (citing AR 656, 660, 682). The Louisiana Geologic representative concluded that there were "no less

---

[1] The Court will cite to documents contained in the Court's record as "Rec. Doc. [X]" and administrative record documents as "AR [X]," because the administrative record documents themselves are not contained in the Court's record. Instead, because of their voluminous nature, the Corps provided the Court and Plaintiffs with compact discs containing the documents comprising the administrative record. (Rec. Docs. 23-2, 24) The administrative record is incorporated into the Court's record by *Notice of Manual Attachment*. (Rec. Doc. 23-3)

damaging feasible alternatives." Id. at 3 (citing AR 660). Additionally, the owner of the land upon which Expert Oil would complete the proposed project indicated that it had no objection to the project or to a requirement that the land be restored upon abandonment of the well. Id. (citing AR 637). The Corps withdrew Expert Oil's application, however, because Expert Oil failed to meet the mitigation requirement that arose as a result of its plan to fill wetlands with the proposed project. Id. (citing AR 373, 375).

On August 20, 2012, Expert Oil reapplied for Corps authorization under NOD-13 to build the road and ring levee (hereinafter, the "2012 Project").[2] Id. (citing AR 350, 381-87); see also (AR 01-03)("Receipt is acknowledged of your application dated August 20, 2012 . . . ."). In the application, Expert Oil indicated that the 2012 Project comprised a 300' x 300' ring levee and an 800' access road, "a portion of [which would] be across a previously impacted area which [was] authorized [under NOD-13]." (AR 382-83) Expert Oil further indicated that it would construct the proposed ring levee with "native material," but stated, "If the well is successful, the road will be permatized with limestone." (AR 383) Following the Corps' delineation of

---

[2] Although it appears that Expert Oil did not formally reapply until August 20, 2012, the administrative record reflects multiple communications between Expert Oil and the Corps regarding the application and the required mitigation activities beginning in November 2011. See (Rec. Doc. 43-1, pp. 3-4)(citing AR 20-28, 231-34, 242-69, 350, 381-87).

the wetlands that would be affected,[3] Expert Oil conducted the requisite mitigation for the "unavoidable wetlands impact of the 2012 Project." (Rec. Doc. 43-1, p. 4)(citing AR 20-28). On August 24, 2012, the Corps sent Expert Oil a letter in which it authorized the 2012 Project under NOD-13. Id. (citing AR 01-03). The letter listed five specific conditions and, in conclusion, generally referenced the conditions of approval contained in NOD-13. (AR 01-02) The Corps furnished a number of entities with copies of the letter, including the Louisiana DWF. (Rec. Doc. 43-1, p. 4)(citing AR 03).

On March 20, 2014, Plaintiffs exercised their right under Section 702 of the Administrative Procedure Act (APA) and filed suit against the Corps, alleging that the Corps' authorization of the 2012 Project under NOD-13 violated the terms of NOD-13; the Clean Water Act (CWA), 33 U.S.C. § 1251, et seq.; and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq. (Rec. Doc. 1) Plaintiffs seek injunctive relief in the form of an order (1) declaring the Corps' authorization of the 2012 Project illegal and invalid; (2) vacating the Corps' authorization and approval of construction of the 2012 Project under NOD-13; and (3) enjoining application of NOD-13 to the

---

[3] Expert Oil's application indicated that the 2012 Project would result in 512' x 22' of new wetland impact. See (AR 383). Additionally, a Corps memorandum on the 2012 Project states, "Approximately 2.32-acres of wetlands will be permanently impacted with the placement of 267-cubic yards of native material and 178-cubic yards of limestone." (AR 04)

2012 Project. (Rec. Doc. 1, p. 20) Plaintiffs further request an award of the costs of litigation, including attorneys' fees, under 28 U.S.C. § 2412 and all other appropriate relief. Id.

The parties agreed to resolve the action on cross motions for summary judgment according to a certain schedule. See (Rec. Doc. 29). Plaintiffs submitted their *Motion for Summary Judgment* **(Rec. Doc. 39)** on February 26, 2015. Defendants filed their *Cross-Motion for Summary Judgment* **(Rec. Doc. 43)** on March 30, 2015. Plaintiffs filed a reply in support of their motion together with an opposition to Defendants' motion on April 27, 2015. (Rec. Doc. 44) Defendants replied on May 18, 2015. (Rec. Doc. 48)

**PARTIES' ARGUMENTS**

**A. Plaintiffs' Motion**

Plaintiffs generally seek summary judgment declaring invalid the Corps' authorization of the 2012 Project under NOD-13 and finding that Plaintiffs have standing to bring suit in this case. First, Plaintiffs argue that the Corps' application of NOD-13 to the 2012 Project was arbitrary and capricious in violating the Clean Water Act and NEPA. The Clean Water Act permits discharge of dredge or fill materials into jurisdictional waters, such as the waters and wetlands of the Atchafalaya Basin, only in accordance with a proper discharge permit. Such discharge permit may authorize either an individual

project or provide general permission to perform certain similar acts in a certain area according its terms. When issuing an individual permit, the Corps must provide public notice and perform an environmental review of the project pursuant to NEPA. For a general permit, these procedures are required only upon its initial approval rather than at the start of each project subsequently authorized under its terms. Here, the general permit in question, NOD-13, carried with it terms and conditions requiring (1) approval of any project within one mile of a wildlife management area from the area's manager, and (2) that any roads constructed under the permit be degraded and the area leveled and restored after the projects they serve are abandoned. Plaintiffs assert that the 2012 Project was authorized within one mile of the Sherburne Wildlife Management Area without permission and features a road made permanent with limestone. Plaintiffs argue that, in this way, the 2012 Project violates the terms of NOD-13, the general permit under which it was authorized. Plaintiffs therefore contend that the Corps' authorization of the 2012 Project under NOD-13 violates the Clean Water Act.

Plaintiffs also argue that the application of NOD-13 to the 2012 Project violates both NEPA and the Clean Water Act because it circumvents the environmental review and public notice requirements of those Acts. The Corps performs NEPA review for

general permits at the issuance of the general permit rather than during approval of the individual project. This review requires the Corps to consider the direct, indirect, and cumulative environmental impacts of the type of activity that is authorized by the general permit. Here, Plaintiffs argue that the Corps misapplied the general permit to a project that goes beyond the scope of the activities that the general permit authorizes. Thus, the Corps has not actually considered the direct, indirect, and cumulative environmental impacts of the type that the 2012 Project presents. Specifically, the Corps has not conducted an analysis of the impacts of the "permatized" road; placement of the permitted structure within one mile of a wildlife management area; and the cumulative effects of another road permitted under NOD-13 in 2000 (hereinafter, the "2000 Project"), such as the unpermitted filling of bayous, the failure to degrade a previous, nearby road following the abandonment of the well it served, and the unpermitted limestone reinforcement of that road, with those of the 2012 Project. Further, the Corps would have been forced to conduct such an analysis of the 2012 Project had they permitted it under an individual permit, which Plaintiffs argue was required. Plaintiffs also assert that, if properly considered under the Acts for an individual permit, the Corps would have been required to issue public notice regarding the 2012 Project.

Next, Plaintiffs contend that they meet the requirements for organizational standing and, therefore, have the authority to bring the instant action. An organization may sue on behalf of its members if its members have standing, the suit is germane to its purpose, and the claims asserted and relief requested do not require the participation of its individual members. Individuals have standing if they have suffered an injury in fact, the injury is fairly traceable to the defendant's act, and it is likely to be redressed by a favorable opinion from the court. Here, Plaintiffs argue that their individual members have standing to sue. Affidavits submitted with the motion reveal that Plaintiffs' members visit the affected area often and that the 2012 Project lessened the aesthetic and recreational value of the area. The authorization of the 2012 Project is traceable to the Corps' actions. A decision from this Court nullifying the permit or otherwise requiring a more thorough review of its environmental effects likely would redress the injury. Next, Plaintiffs argue that their purpose at least in part is to protect the Atchafalaya Basin, which purpose is directly advanced by the instant action. Finally, Plaintiffs maintain that neither their claims nor requests for relief require the participation of any individual members, because they do not seek damages. Thus, Plaintiffs assert that they satisfy the

requirements of organizational standing and are entitled to summary judgment on the issue.

**B. The Corps' Motion**

The Corps moves for summary judgment dismissing with prejudice all of Plaintiffs' claims. First, the Corps argues that the doctrine of laches bars Plaintiffs' claims. To invoke laches, a defendant must show a delay in asserting a claim, a lack of excuse for such delay, and resulting prejudice. Here, Plaintiffs waited until sixteen months after observing construction on the 2012 Project to file their suit, have failed to offer any excuse for such delay, and upholding Plaintiffs' claims would prejudice the Corps by undermining the permitting process and Expert Oil because it has completed the project. Thus, the Corps contends that the doctrine of laches bars Plaintiffs' claims.

Second, the Corps argues that Plaintiffs' claims lack merit because it properly verified and approved the 2012 Project under NOD-13. "NOD-13 applies to projects for 'dredging and deposits of dredged and/or fill material in wetlands of the New Orleans District of the Corps for construction of oilfield roads, drilling locations, pits, levees, and associated facilities.'" (Rec. Doc. 43-2, p. 11)(citing AR 88). Thus, the 2012 Project fit within the category of projects authorized by NOD-13. Further, the size of the levee and road comprising the 2012

Project are within the limits of NOD-13. Lastly, the Corps collected and reviewed plans and maps related to the project, conducted a meeting with Louisiana Geologic to determine that no less damaging feasible alternative existed, demanded mitigation from Expert Oil, and received permission from the owner of the affected property, all in satisfaction of NOD-13.

The Corps argues that Plaintiffs' claims to the contrary are without merit and fail to show that the Corps' decision was arbitrary, capricious, or otherwise not in accordance with law. The Corps insists that the 2012 Project is not located within one mile of the Sherburne Wildlife Management Area. The patch of land within one mile of the 2012 Project that Plaintiffs argue is part of the Sherburne Wildlife Management Area actually consists of two parcels of property owned by the United States since 1991. The Corps further disputes Plaintiffs' allegation that the 2012 Project is located in and would damage the Louisiana Black Bear Critical Habitat. The Corps asserts that only the portion of Iberville Parish to the north if Interstate 10 is part of the habitat, and the 2012 Project is south of Interstate 10. The Corps concludes that the 2012 Project does not threaten the habitat because it is not located within its bounds. Additionally, the Corps stresses that the addition of limestone to the access road does not truly render the road permanent, because the limestone is removable and, in fact, must

be removed under the conditions of NOD-13 at the conclusion of the project. Allowing the 2012 Project to connect with the 2000 Project similarly does not violate the terms of NOD-13 because the Corps determined that use of those facilities was the least damaging feasible alternative as necessary under NOD-13. Thus, Plaintiffs' contention that the 2012 Project violates NOD-13 is without merit.

Third, the Corps asserts that Plaintiffs' NEPA claims are meritless and moot. The Corps conducted the only environmental review of NOD-13 required by NEPA when it issued NOD-13. The Corps argues that it properly applied NOD-13 to the 2012 Project. Thus, no further NEPA review was required when it authorized the 2012 Project. Plaintiffs' NEPA claims are without merit. Additionally, Expert Oil has completed construction of the 2012 Project. NEPA requires prospective review of the environmental effects of future events. The Corps cannot prospectively consider the effects of a project that has already been constructed. Thus, Plaintiff's NEPA claims are moot.

## C. Plaintiffs' Opposition and Reply

Plaintiffs make three major arguments in opposition and reply. First, Plaintiffs dispute the Corps' contention that the doctrine of laches bars their claims. Second, Plaintiffs reassert that the Corps' misapplication of NOD-13 to the 2012

Project was arbitrary, capricious, or otherwise contrary to law. Finally, Plaintiffs argue that their NEPA claim is not moot.

Plaintiffs argue that a laches defense is inappropriate in this case. The Corps' misapplication of NOD-13 to the 2012 Project avoided any requirement of public notice. Consequently, Plaintiffs did not notice the 2012 Project until late 2012, after Expert Oil completed construction. Plaintiffs were then entitled to take the time, through Freedom of Information Act requests, to learn about the project before filing suit. The violations of the Clean Water Act and NEPA were evident only after their investigation. There was therefore no inexcusable delay before Plaintiffs filed suit in March 2014. Moreover, to satisfy the third element of the laches doctrine, the Corps must show not only that there was prejudice but that the prejudice resulted from Plaintiffs' delay. Here, Plaintiffs did not learn of the 2012 Project until after Expert Oil completed construction, and therefore, the delay cannot be the cause of any prejudice to Expert Oil. Further, Plaintiffs argue that it is not prejudicial to the Corps to require it to act in compliance with the law; it is the Corps' unlawful acts themselves that undermine its permitting process rather than Plaintiffs' attempt to hold the Corps accountable. Plaintiffs therefore maintain that the laches doctrine does not bar their claims.

12

Next, Plaintiffs again argue that the Corps' authorization of the 2012 Project under NOD-13 was arbitrary and capricious and in violation of the terms of NOD-13. The 2012 Project violates the terms of NOD-13 by including "permatized," limestone roads; being located within one mile of the Sherburne Wildlife Management area without proper permission; connecting to the 2000 Project road construction without considering the illegal status of that construction; and failing to consider the impact of the 2012 Project on the Louisiana Black Bear

Finally, Plaintiffs dispute the Corps' assertion that their NEPA claim is moot because Expert Oil already completed construction of the 2012 Project. Rather, meaningful relief, such as restoration and mitigation, remains available despite completion of the 2012 Project. Further, Plaintiffs argue that the Corp's abuse of NOD-13 is an issue that is capable of repetition, yet evading review. There is a possibility that the Corps will again misapply the general permit to a project in the Atchafalaya Basin, which will further injure the Plaintiff. These acts evade review because when the Corps authorizes a project under NOD-13 it does not issue public notice, making it likely that Plaintiffs will not learn of each new project until after construction is complete and the damage is done. Plaintiffs therefore argue that their claims are not moot.

13

**D. The Corps' Reply**

In reply to Plaintiffs' opposition, the Corps reurges its arguments relating to the doctrine of laches, the validity of its approval of the 2012 Project under NOD-13, and the mootness of Plaintiffs' NEPA claims. First, the Corps argues that Plaintiffs' opposition bolsters its laches argument, because it reveals that the 2012 Project was not actually complete when Plaintiffs discovered it. Specifically, Plaintiffs have not shown that Expert Oil had "begun the process of drilling or installing a well and exploring for oil." (Rec. Doc. 48, p. 2) Second, the Corps argues that its approval of the 2012 Project under NOD-13 was proper, because the terms of the permit will require restoration upon abandonment, the 2012 Project is not in fact located within one mile of the Sherburne Wildlife Management Area, and Plaintiffs' claims that the 2012 Project adversely affects the Louisiana Black Bear and its critical habitat are unfounded. Finally, the Corps reasserts that Plaintiffs' NEPA claims are moot.

<u>**LEGAL STANDARD**</u>

When presented with a motion for summary judgment, a court normally considers whether the record, "viewed in the light most favorable to the non-moving party," evinces a genuine issue of material fact. <u>Tex. Committee on Natural Resources v. Van Winkle</u>, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002)(citing Fed. R.

Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Hill v. London, Stetelman, & Kirkwood, Inc., 906 F.2d 204, 207 (5th Cir. 1990)). Only if the court answers the inquiry in the negative will the moving party be entitled to judgment as a matter of law. Id. This formula adjusts, however, when it arises in the context of judicial review of an administrative agency's decision. Id. In such cases, the "motion for summary judgment stands in a somewhat unusual light, in that the administrative record proves the complete factual predicate for the court's review." Id. (internal quotation marks omitted)(citing Piedmont Envtl. Council v. United States Dep't of Transp., 159 F. Supp. 2d 260, 268 (W.D. Va. 2001)). The movant's burden is therefore "similar to his ultimate burden on the merits." Id.

Despite these necessary alterations to the usual Federal Rule of Civil Procedure Rule 56 analysis, courts have held that summary judgment remains "an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based on the administrative record." Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995). When reviewing an administrative agency's decision, the district court must "determine whether as a matter of law, evidence in the administrative record permitted the agency to make the decision it did, and summary judgment is an appropriate mechanism for

deciding the legal question of whether an agency could reasonably have found the facts as it did." The Sierra Club v. Dombeck, 161 F. Supp. 2d 1052, 1064 (D. Ariz. 2001); see City & Cnty. of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997).

A court will set aside or otherwise disturb nonadjudicatory agency action if the party pursuing judicial review shows that the agency "action, findings, and conclusions" are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if they were made "without observance of procedure required by law."[4] 5 U.S.C. § 706(2). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)(citations omitted); see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "The burden of proving that an agency decision was arbitrary or

---

[4] Plaintiffs seek judicial review pursuant to Section 702 of the APA, which allows those who are adversely affected by agency action, including the U.S. Army Corps of Engineers, to obtain judicial review of that action. 5 U.S.C. § 702. Section 706 sets forth the scope of judicial review, including the arbitrary and capricious standard. 5 U.S.C. § 706.

16

capricious [or made without proper procedures] rests with the party seeking to overturn the agency decision." Van Winkle, 197 F. Supp. 2d at 596.

## DISCUSSION

### A. Whether Plaintiffs Have Standing

Because standing is a jurisdictional issue, the Court will address it first. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101-02 (1998). The Court will examine whether associational standing exists in this case, because Plaintiffs are organizations. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., 528 U.S. 167, 181 (2000).

First, an individual plaintiff has standing to sue in its own right when "(1) it has suffered an 'injury in fact' . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 180-81. To be an "injury in fact," the injury must be "concrete and particularized" and "actual or imminent."

Id. at 180. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Id. at 183. Here, Plaintiffs attach to their motion affidavits from three of their individual members. Each of these affidavits reflects the affiant's habitual use of the affected areas and lessened enjoyment—aesthetically and recreationally—of such use as a result of the 2012 Project.[5] The Court therefore concludes that Plaintiffs have alleged injury in fact. Next, it is clear that this injury is "fairly traceable" to the challenged action, namely, the permitting of the 2012 Project. Finally, because the Court has the authority to "hold unlawful and set aside" the permit for the 2012 Project if it determines that the Corps acted arbitrarily or capriciously or without proper procedure in granting the permit, it is likely that a favorable opinion from this Court will redress the injury. Thus, Plaintiffs' individual members would have standing to sue in their own right.

---

[5] Jody Meche, who is a member of both the Atchafalaya Basinkeeper and the Louisiana Crawfish Producers' Association-West, is a crawfisherman who works and spends leisure time in the Atchafalaya Basin. (Rec. Doc. 39-2, p. 1) He testified that the 2012 Project "destroyed [the] wetlands and made the area less beautiful." Id. at 5. Mike Bienvenu is the president of the Louisiana Crawfish Producers' Association-West, and he testified that the 2012 Project "destroys the beauty of the wetlands and makes the area uglier," resulting in reduced enjoyment of the area. (Rec. Doc. 39-3, pp. 1, 4) Finally, Dean Wilson, Executive Direct of the Atchafalaya Basinkeeper, testified that the 2012 Project "made the area less beautiful to see" and inhibits recreational activities in the area. (Rec. Doc. 39-4, pp. 1, 3-4)

Second, "the interests at stake" must be "germane to the organization's purpose." Laidlaw, 528 U.S. at 181. "The germaneness requirement helps ensure that an association, through its goals and purposes will have a sufficient interest in the outcome of litigation to serve as the defendant's natural adversary." Apalachicola Riverkeeper v. Taylor Energy Co. LLC, No. 12-337, 2013 WL 1897142, at *9 (E.D. La. May 4, 2013)(quoting Concerned Citizens Around Murphy v. Murphy Oil USA, Inc., 686 F. Supp. 2d 663, 673-74 (E.D. La. 2010)). Here, Plaintiffs have an interest in protecting the ecosystem of the Atchafalaya Basin, the area affected by the 2012 Project. Atchafalaya Basinkeeper's purpose is "to preserve the ecosystem of the Atchafalaya Basin for present and future generations." (Rec. Doc. 39-4, p. 1) The purpose of the Louisiana Crawfish Producers Association-West is "to protect water quality in the Atchafalaya Basin in order to promote a healthy, thriving habitat for crawfish and other fish and wildlife living in the Atchafalaya Basin and throughout Louisiana." (Rec. Doc. 39-3, p. 1) The Court therefore concludes that Plaintiffs have a sufficient interest in the outcome of the litigation to satisfy the second requirement for associational standing.

Third, the asserted claims and requested relief cannot be of the sort that would require the participation of individuals. Here, Plaintiffs seek injunctive relief and the costs of

litigation. Such relief is not particular to any person and,
therefore, does not require the participation of individual
members. It is appropriately resolved in the group context. See
Apalachicola Riverkeeper, 2013 WL 1897142, at *9 (quoting Hunt
v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 344
(1977)). The Court finds that Plaintiffs have satisfied the
requirements of associational standing.[6] Accordingly, the Court
grants in part Plaintiffs' motion for summary judgment.

**B. Whether the Doctrine of Laches Bars Plaintiffs' Claims**

Defendants argue that the doctrine of laches bars
Plaintiffs' claims. Plaintiffs counterargue that Defendants have
not shown unreasonable delay or resulting prejudice as required
to invoke the doctrine. To bar litigation by invoking the
doctrine of laches, a defendant must show "(1) a delay in
asserting a right or claim; (2) that the delay was not
excusable; and (3) that there was undue prejudice to the party
against whom the claim is asserted." Envtl. Def. Fund, Inc. v.
Alexander, 614 F.2d 474, 478 (5th Cir. 1980)(quoting Save Our

---

[6] The Court also finds that Plaintiffs satisfy the prudential standing
doctrine. See National Credit Union Administration v. First National Bank &
Trust Co., 522 U.S. 479, 488 (1998). "For a plaintiff to have prudential
standing under the APA, 'the interest sought to be protected by the
complainant [must be] arguably within the zone of interests to be protected
or regulated by the statute . . . in question." Id. (quoting Association of
Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153
(1970)). Undoubtedly, Plaintiffs' "recreational use and aesthetic enjoyment"
of the Atchafalaya Basin are "among the *sorts* of interests that [the Clean
Water Act and NEPA] were specifically designed to protect." See Lujan v.
National Wildlife Federation, 497 U.S. 871, 886 (1990); Save Ourselves, Inc.
v. U.S. Army Corps of Engineers, 958 F.2d 659, 661 (1992).

Wetlands, Inc. (SOWL) v. U.S. Army Corps of Engineers, 549 F.2d 1021, 1026 (5th Cir. 1977)). The decision to bar an action under the doctrine of laches "depends upon the circumstances of [the] case and is 'a question primarily addressed to the discretion of the trial court.'" Id. (quoting Gardner v. Panama R.R. Co., 342 U.S. 29, 30 (1951). "Mere neglect to challenge action is not sufficient to establish laches in any case. When government action is involved, members of the public are entitled to assume that public officials will act in accordance with law." Id. at 479 (citing Save Our Wetlands, 549 F.2d at 479). Thus, "the government must show that those whom it seeks to bar by invoking laches were or should have been aware of the questionable nature of the governmental activity." Id.

First, Defendants must show that Plaintiffs delayed in filing the instant lawsuit. Defendants rely on the affidavits that Plaintiffs submitted with their motion, which suggest that they first witnessed certain elements of the 2012 Project in late 2012. (Rec. Doc. 39-2, pp. 4-5) Defendants note that Plaintiffs filed the instant lawsuit on March 20, 2014. (Rec. Doc. 1) Plaintiffs do not appear to deny these assertions. The Court concludes that Defendants have satisfied the first element for the invocation of laches.

Second, Defendants must show that the above-described delay was not excusable. Defendants argue that Plaintiffs' delay was

21

not excusable, because Plaintiffs were already working with their counsel on other legal matters. (Rec. Doc. 43-2, p. 10) Plaintiffs assert that their delay in filing this lawsuit is attributable to the Corps' decision to misapply the general permit, NOD-13, to the 2012 Project, which allowed the Corps to avoid providing public notice of the 2010 Project. (Rec. Doc. 44, p. 4) Plaintiffs argue that they were then entitled to employ requests for information pursuant to the Freedom of Information Act (FOIA) to investigate the project and any possible claim before actually taking legal action. Id. at 6-7. Plaintiffs indicate that they made requests pursuant to FOIA in November 2012 and, later, under Louisiana public records provisions on April 15, 2013. Id. at 7. Courts have noted the import of allowing plaintiffs the time to investigate and prepare their cases before filing them to avoid creating a "powerful and perverse incentive for plaintiffs to file premature and even frivolous suits to avoid the invocation of laches." See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers, 781 F.3d 1271, 1285 (11th Cir. 2015). It is evident that part of Plaintiffs' delay was a result of their investigation of the 2012 Project. The Court cannot conclude that Plaintiffs' delay in this "complex environmental litigation" was unreasonable or not excusable. See id. Moreover, Plaintiffs filed suit within the general six-year statute of

limitations for challenges to government action, see 28 U.S.C. § 2401, and Defendants have not shown when Plaintiffs became or should have become aware that the 2012 Project could be "questionable" in nature. Alexander, 614 F.2d at 479. Because the Court finds that Defendants have failed to show that Plaintiffs' delay was not excusable, the Court will not apply the doctrine of laches to bar Plaintiffs' suit in this case.

**C.   Whether the Authorization of the 2012 Project Was Unlawful**

The Clean Water Act prohibits "the discharge of any pollutant by any person." 33 U.S.C. § 1311(a). "'The discharge of a pollutant' is defined broadly to include any addition of any pollutant to navigable waters[,] and 'pollutant' is defined broadly to include not only traditional contaminants but also solids such as 'dredged spoil, . . . rock, sand, [and] cellar dirt.'" Rapanos v. United States, 547 U.S. 715, 723 (2006)(citing 33 U.S.C. § 1362(6), (12)). This prohibition also extends to "wetlands adjacent to waters." 40 C.F.R. § 230.3(s)(7).

The CWA provides exceptions to this broad prohibition. 33 U.S.C. § 1311(a). Relevant here, "Section 1344 authorizes the Secretary of the Army, acting through the Corps, to 'issue permits . . . for the discharge of dredged or fill material into the navigable waters at specified disposal sites.'" Rapanos, 547 U.S. at 723 (citing 33 U.S.C. § 1344(a), (d)). The Corps may

issue an *individual* permit for the discharge of dredged or fill material after providing public notice and an opportunity for public hearings. 33 U.S.C. § 1344(a). Alternatively, the Corps may grant a *general* permit:

> In carrying out his functions relating to the discharge of dredged or fill material under this section, the [Secretary of the Army, acting through the Chief of Engineers] may, after notice and opportunity for public hearing, issue general permits on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment.

Id. § 1344(e)(1). The Corps conducts a review of the proposed project according to NEPA when it issues either the individual or general permit. 33 U.S.C. § 1344(e)(1); 33 C.F.R. §§ 325.2(a)(2), (4), (e)(2), 325.3. When the Corps later authorizes projects under the general permit, it does not conduct another NEPA review.

Plaintiffs argue that the application of the general permit, NOD-13, to the 2012 Project violates the CWA and NEPA, because the 2012 Project exceeds the scope of NOD-13. Thus, Plaintiffs argue that the Corps could only authorize the dredge and fill activities of the 2012 Project under an individual permit. The specific conditions of NOD-13 that Plaintiffs argue the 2012 Project violates are as follows:

1) Special condition (u), which requires that "[r]oad fills . . . shall be degraded when the locations which they were installed to serve are abandoned [and the area must be] leveled and restored to as near pre-project conditions as practicable." (AR 92)

2) Condition (a), which prohibits work "[i]n or within one mile of the boundaries of any . . . wildlife [management area] without approval of the respective [wildlife] management area . . . manager." (AR 88)

3) Special condition (e), which prohibits projects authorized under the permit to "connect with other fill authorized by this general permit [or be located] within one-half mile of an existing or restored road approved by this general permit, unless [it is] the least damaging practicable alternative." (AR 90)

4) Condition (d), which prohibits works "[w]ithin any area where the activity is likely to adversely affect federally listed threatened or endangered species, [such as the Louisiana Black Bear,] or that is likely to destroy of adversely modify the critical habitat of such species." (AR 88)

Although it is close, the Court concludes that, ultimately, the 2012 Project does not violate the terms of NOD-13. First, the terms and conditions of the general permit are referenced and incorporated into the authorization for the 2012 Project. Although Plaintiffs argue that the access road has been "permatized" or made permanent with limestone, the Corps points out that the permit holder is obligated to remove the limestone road at the conclusion of the project. NOD-13 does not appear to require the use of a particular type of material for the access road, but rather requires that the road fills be degraded and the area restored upon abandonment. This end can be achieved although the road is currently "permatized" with limestone. Second, Plaintiffs have not met their burden of showing that the

authorization of the 2012 Project under NOD-13 was arbitrary and capricious because it violated NOD-13's prohibition on projects within one mile of a wildlife management area without its manager's approval and, therefore, the CWA and NEPA. The Corps has submitted evidence that the small tract of property that Plaintiffs contend is part of the Sherburne Wildlife Management Area is in fact property that is owned by the Corps of Engineers. Based on this evidence, the Corps concluded that the 2012 Project is not within one mile of the Sherburne Wildlife Management Area.    Third, the Corps may authorize under NOD-13 projects contiguous to an existing work authorized under NOD-13 if the Corps determines that it is the "least damaging practicable alternative," and it appears the Corps so concluded. (AR 656, 660) The geological meeting produced that conclusion, i.e., there were no less damaging feasible alternative routes. Finally, the Court cannot conclude that the authorization of the 2012 Project necessarily violates condition (d) of NOD-13 as a result of its location within a parish that also includes some of a threatened or endangered species' critical habitat, namely, that of the Louisiana Black Bear. The record demonstrates that the Project is located south of Interstate 10 and does not include the portion of Iberville Parish that encompasses the Black Bear's habitat, which falls on the north side of the elevated Interstate 10.

In conclusion, the Court has reviewed the administrative record and holds that the Corps' decision to authorize the 2012 Project under NOD-13 does not violate the CWA and NEPA by exceeding the scope of NOD-13. Consequently, the Court concludes that the Corps was not arbitrary and capricious in authorizing the 2012 Project under NOD-13, and the Corps' decision must be upheld. Although the Court finds that the Corps' actions were lawful based upon the Administrative Record in this case, the Court notes its concern about the procedures that the Corps has employed in this case. In essence, the Corps uses a "general permit" issued originally in 1981 as the basis to approve a new project in 2012 without requirement for an in-depth NEPA review and without any public notice or opportunity for public comment. Although counsel for Plaintiffs acknowledge that the applicable federal statutes and regulations allow the Corps to proceed in this manner, it strikes this Court as bad public policy to not allow, at a minimum, some type of public notice and comment in this situation. While not legally mandated to do so, there is nothing to preclude the Corps from allowing this minimal public involvement, especially on matters involving the degradation of sensitive wetlands. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion **(Rec. Doc. 39)** is **GRANTED IN PART**. It is **GRANTED** with respect to standing and laches, but **DENIED** in all other respects.

27

   **IT IS FURTHER ORDERED** that Defendants' motion **(Rec. Doc. 43)** is **GRANTED IN PART**. It is **DENIED** with respect to laches, but **GRANTED** with respect to Plaintiffs' claim that authorization of the 2012 Project under NOD-13 violated the CWA and NEPA.

   New Orleans, Louisiana this 19th day of June, 2015.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE